# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2014-1507

## DAYDANYON CORPORATION,

Appellant,

v.

## DEPARTMENT OF DEFENSE,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in Nos. ASBCA 57611, 57681, 57717, Administrative Judge David W. James, Jr.

## CORRECTED BRIEF OF APPELLANT DAYDANYON CORPORATION

Joseph A. Camardo, Jr., Esq.
CAMARDO LAW FIRM, PC
127 Genesee Street
Auburn, New York 13021
Tel: (315) 252-3846
Fax: (315) 252-3508
Email: joecamardo@camardo.com

September 12, 2014                    Attorneys for Appellant

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DayDanyon Corporation _____ v. Department of Defense _____

No. 14-1507

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
DayDanyon Corporation _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.    The full name of every party or amicus represented by me is:

DayDanyon Corproation, P.O. Box 1302, Hartwell, Georgia 30643

2.    The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:

None.

4.  ☑  The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

Joseph A. Camardo, Jr., Camardo Law Firm, PC, 127 Genesee Street, Auburn, New York 13021.

September 11, 2014 _____          /s/ Joseph A. Camardo, Jr. _____
Date                                            Signature of counsel

                                                Joseph A. Camardo, Jr. _____
                                                Printed name of counsel

Please Note: All questions must be answered
cc: A. Bondurant Eley _____

124

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST

TABLE OF AUTHORITIES…………………………………………………....…ii

STATEMENT OF RELATED CASES………………………………………….1

JURISDICTIONAL STATEMENT………………………………………………1

STATEMENT OF THE ISSUES…………………………………………………1

STATEMENT OF THE CASE……………………………………………………2

STATEMENT OF THE FACTS……………………………………………....…3

SUMMARY OF THE ARGUMENT………………………………………….…8

ARGUMENT………………………………………………………………....…9

    I.    STANDARD OF REVIEW…………………………………………..9

    II.    THE BOARD ERRED AS A MATTER OF LAW IN
        GRANTING THE GOVERNMENT'S MOTION FOR
        SUMMARY JUDGMENT, AND DENYING
        DAYDANYON'S CROSS-MOTION FOR SUMMARY
        JUDGMENT, IN ASBCA 57611 BY HOLDING THAT
        THE GOVERNMENT DID NOT BREACH THE IDIQ
        CONTRACT BY FAILING TO ORDER THE
        GUARANTEED MINIMUM (BY DECEMBER 24, 2010)…....…..11

CONCLUSION………………………………………………………………...18

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Alaska Lumber & Pulp Co. v. Madigan,
2 F.3d 389 (Fed.Cir.1993)……………………………………………...14

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S.Ct. 2505 (1986)…………………………………….11

Beacon Constr. Co. v. United States,
161 Ct. Cl. 1, 314 F.2d 501(1963)……………………………………...18

C. Sanchez and Son, Inc. v. United States,
6 F.3d 1539 (Fed.Cir.1993)……………………………………………11

Dot Sys., Inc. v. United States,
231 Ct.Cl. 765 (1982)………………………………………………….13

Forman v. United States,
329 F.3d 837 (Fed.Cir.2003)…………………………………………...10

Granite Constr. Co. v. United States,
962 F.2d 998 (Fed.Cir.1992)…………………………………………...14

Interstate Gen. Gov't Contractors, Inc. v. Stone,
980 F.2d 1433 (Fed.Cir.1992)……………………………………...17, 18

Lear Siegler Services, Inc. v. Rumsfeld,
457 F.3d 1262 (Fed.Cir.2006)…………………………………………10

Maxima Corp. v. United States,
847 F.2d 1549 (Fed. Cir. 1988)………………………………………...13

Mason v. United States,
222 Ct. Cl. 436, 615 F.2d 1343 (1980)…………………………….13, 14

Mass. Bay Transp. Auth. v. United States,
129 F.3d 1226 (Fed. Cir. 1997)………………………………………...15

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed.Cir.1996)……………………………………...14

Miller v. Robertson,
266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265 (1924)…………………………...15

Titan Corp. v. West,
129 F.3d 1479 (Fed.Cir.1997)……………………………………10

Travel Centre v. Barram,
236 F.3d 1316 (Fed. Cir.2001)…………………………………....12

United States v. Boeing Co.,
802 F.2d 1390 (Fed.Cir.1986)……………………………………10

Wickham Contracting Co. v. Fischer,
12 F.3d 1574 (Fed.Cir.1994)……………………………………...10

## Statutes & Regulations

41 U.S.C. §609(b)…………………………………………………10

FAR 16.504(a)(2)………………………………………...12, 13

FAR 52.216-18…………………………………………………..4

FAR 52.216-22……………………………………...5, 16, 17

FAR 52.216-9007……………………………………………… 5

## STATEMENT OF RELATED CASES

There have not been any other appeals related to this civil action before this or any other appellate court, and there are no cases known to counsel pending in this or any other court that will directly affect or be directly affected by this Court's decision in the instant appeal.

## JURISDICTIONAL STATEMENT

This appeal is taken from the January 22, 2014 Opinion By Administrative Judge David W. James, Jr. of the Armed Services Board of Contract Appeals ("ASBCA" or "Board"). The January 22, 2014 Opinion appealed from is a "final judgment," and the Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. §1295(a)(10), which provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction…of any appeal from a final decision of an agency board of contract appeals pursuant to section 8(g)(1) of the Contract Disputes Act of 1978 (41 U.S.C. 607(g)(1))." The instant appeal was timely under 41 U.S.C. §607(g)(1) as it was taken within one hundred twenty (120) days after receipt of the January 22, 2014 Decision of the ASBCA.

## STATEMENT OF THE ISSUES

The issue in this case is whether the ASBCA erred as a matter of law in granting the Government's motion for summary judgment, and denying Appellant's cross-motion for summary judgment, in ASBCA No. 57611 by

1

holding that the Government did not breach the subject IDIQ Contract by failing to order the guaranteed minimum of 1,000 Collapsible Joint Modular Intermodal Containers ("JMICs") by 120 days prior to the expiration of the Contract (or by December 24, 2010).

## STATEMENT OF THE CASE

This is an appeal from the an Opinion and Decision of the ASBCA dated January 22, 2014 regarding Contract No. SPM8ED-09-D-0001 ("Contract"), granting the Government's motion for summary judgment and denying DayDanyon's cross-motion for summary judgment in ASBCA 57611, and granting the Government's motion for summary judgment dismissing ASBCA 57717 as being duplicative of ASBCA 57611. (A36-46)

ASBCA 57611 is based on DayDanyon's appeal of the Contracting Officer's deemed denial of its April 6, 2011 Claim in the amount of $720,700 alleging breach of contract for DSCP's failure to order the guaranteed minimum of 1,000 JMICs by December 24, 2010. (A521-524). DayDanyon's appeal was taken from the Contracting Officer's letter dated April 8, 2011 stating as follows:

> This letter is in response to your subject claim letter. Per the terms of the subject contract, the government has until the end of the two year base period to order the guaranteed minimum quantity. The two year base period for contract SPM8ED-09-D-0001 expires on April 23rd, 2011. Therefore, your claim is premature. If you wish, you may file your claim after the base period has expired.

2

(A525-526)

On May 18, 2011, DayDanyon submitted another Claim after the base period of the Contract had ended alleging breach of contract due to the Government's failure to order the guaranteed minimum of 1,000 JMICs by December 24, 2010. (A550-552)  By letter dated July 15, 2011, the Contracting Officer denied DayDanyon's May 18, 2011 Claim in its entirety. (A553-554) DayDanyon appealed from that decision on July 29, 2011, which was docketed as ASBCA No. 57717.

In its January 22, 2014 Decision, the Board, *inter alia*, dismissed ASBCA 57717 as being duplicative of ASBCA 57611. (A36-46)  With respect to ASBCA 57611, Judge James granted the Government's motion for summary judgment, and denied DayDanyon's cross-motion for summary judgment, holding that the Government did not breach the Contract for failing to order the guaranteed minimum by December 24, 2010 (A44-45).

## STATEMENT OF THE FACTS

On April 23, 2009, Respondent Defense Supply Center Philadelphia, whose name was changed to DLA Troop Support (referred to herein as "DSCP" or "Government"), awarded indefinite quantity Contract No. SPM8ED-09-D-000l ("Contract") to Appellant DayDanyon Corporation ("DayDanyon") for the supply of Collapsible Joint Modular Intermodal Containers ("JMICs"). (A196-215).

3

The Contract had four line item numbers ("CLINs"). CLINs 0001-0003 each stated an estimated quantity of 500 JMICs. CLIN 0001 JMICs were to be painted green, CLIN 0002 were to be painted tan, and CLIN 0003 were not painted. CLIN 9906 was for first article test. (A195-197, A-206)

The Contract stated:

> **This is a[n] Indefinite Quantity Contract. Orders may be issued on this contract for a period of TWO YEARS.**
>
> …
>
> First Article Test quantities of 2 each are due to the government test facility…on or before 150 days after date of award….
>
> After First Article Test approval, **the required delivery for production quantities under this contract is 120 days after the date of the resulting delivery orders.**
>
> **The Guaranteed Minimum is a total of 500 containers, whether placed for a single CLIN, or combination of CLINS that collectively total 500 containers. The guaranteed minimum is 500 containers per year. Since this is a two year base contract the minimum quantity is multiplied by 2.**

(emphasis added) (A196)

The Contract contained the following FAR 52.216-18, ORDERING (OCT 1995) Clause:

> (a)     Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities

4

designated in the Schedule. Such orders may be issued -

FROM: DATE OF CONTRACT AWARD

THROUGH: TWO (2) YEARS

(b)    All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

(A210)

The Contract also contained the following FAR 52.216-22, INDEFINITE

QUANTITY (OCT 1995) clause:

(d)    Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided,* **that the Contractor shall not be required to make any deliveries under this contract after Two Years[.]**

(emphasis added) (A211)  Notably, "Two Years" was added to the end of this clause following award.  This clause was contained in the Solicitation, but contained a blank space where the "Two Years" was added. (A91)

The Contract included the following FAR 52.216-9007, CONTRACT AND

DELIVERY ORDER LIMITATIONS (JUL 2006), Clause:

(a)    Delivery orders will specify delivery no less than 120 days from the date of the order.

…

(c)    Guaranteed Minimum.

(1)    The Government guarantees that it will order under this contract…the following minimum, as applicable:

(ii)    Base period of two or more years.
500 EA TOTAL (Quantity) multiplied by two [2] …

(A211)

By letter dated April 6, 2010, DSCP conditionally accepted DayDanyon's first article, provided that DayDanyon submit a corrective action plan addressing the deficiencies. (A336). DayDanyon submitted its corrective action plan to DSCP on or about April 7, 2010 (A351-354), and DSCP approved same on or about April 9, 2010 (A352). DSCP authorized DayDanyon to begin production on April 29, 2010. (A356).

On May 3, 2010, DSCP issued Delivery Order No. 0002 ("DO2") for 100 units NSN - 5795 (tan), and Delivery Order No. 0003 ("DO3") for 400 units NSN - 5311 (unpainted). (A358-361)  These two delivery orders were ordered under CLIN "0001" (NSN - 5802, green) notwithstanding the color discrepancy.  Both delivery orders had a delivery date of March 29, 2010, later corrected to August 31, 2010, 120 days from receipt of order. (A362-365)

On August 5, 2010, the Contracting Officer issued unilateral Modification No. 000203 to DO2 extending the delivery date for 100 tan painted JMICs from

6

August 31, 2010 to October 15, 2010, and unilateral Modification No. 000302 to DO3 extending the delivery date for 300 unpainted JMICs from August 31, 2010 to September 30, 2010, and for the 100 balance of unpainted JMICs from August 31, 2010 to October 15, 2010. (A407-410).

Effective November 23, 2010, bilateral DO2 Modification No. 000204 extended the delivery date for 100 tan JMICs to March 15, 2011, and bilateral DO3 Modification No. 000303 extended the delivery date for 400 unpainted JMICs to March 8, 2011. (A438-441)    These modifications clarified the foregoing discrepancies between CLIN and NSN numbers on the delivery orders. (A439, A441)

On April 6, 2011, DayDanyon sent a certified Claim in the amount of $720,700 to the Contracting Officer alleging breach of contract for DSCP's failure to order the guaranteed minimum of 1,000 JMICs by December 24, 2010. (A522-524).

By letter dated April 8, 2011, the Contracting Officer responded to DayDanyon's Claim stating as follows:

> This letter is in response to your subject claim letter. Per the terms of the subject contract, the government has until the end of the two year base period to order the guaranteed minimum quantity. The two year base period for contract SPM8ED-09-D-0001 expires on April 23rd, 2011. Therefore, your claim is premature. If you wish, you may file your claim after the base period has expired.

(A526)

On April 20, 2011, the Contracting Officer issued: (a) unilateral contract Modification. P0004 which terminated the Contract for default and advised DayDanyon of its appeal rights (A530-535); and (b) unilateral Modification 000205 and 000304 terminating delivery ordered 2 and 3 for default (A536-549). DayDanyon appealed from these decisions on July 11, 2011, which was docketed as ASBCA No. 57681.

By letter dated April 27, 2011, DayDanyon appealed from the Contracting Officer's April 8, 2011 "deemed denial" of its Claim, which the ASBCA docketed as ASBCA No. 57611.

On May 18, 2011, after the base period of the Contract had ended, DayDanyon submitted another Claim to the Contracting Officer for breach of contract due to the Government's failure to order the guaranteed minimum of 1,000 JMICs by December 24, 2010. (A550-552)

By letter dated July 15, 2011, the Contracting Officer denied DayDanyon's May 18, 2011 Claim in its entirety. (A553-554)  DayDanyon appealed from that decision on July 29, 2011, which was docketed as ASBCA No. 57717.

## SUMMARY OF THE ARGUMENT

The Board committed an error of law by ignoring the plain language of the Contract and holding that the Government did not breach the Contract by failing to

8

order the guaranteed minimum by one-hundred twenty (120) days prior to the expiration of the Contract. The IDIQ Contract required the Government to order a minimum of 1,000 JMIC containers within two years of award. The Contract also allowed the contractor one hundred twenty (120) days to complete a delivery order, and specifically provided that the contractor was not required to make deliveries after two (2) years. As such, the plain language of the Contract required that the Government place the guaranteed minimum order by no later than December 24, 2010 (one hundred twenty (120) days prior to the Contract expiration date of April 23, 2011). It is undisputed that the Government failed to order the guaranteed minimum of 1,000 JMICs prior to termination of the Contract. In fact, the Government only ordered 500 JMICs from DayDanyon under the Contract. The ASBCA erred by granting the Government's motion for summary judgment, and denying DayDanyon's cross-motion for summary judgment, on the issue of breach for the Government's failure to order the guaranteed minimum quantity in accordance with the terms of the Contract. It is respectfully submitted that the ASBCA's decision should be reversed, DayDanyon's cross-motion for summary judgment should be granted, and the matter should be remanded back to the ASBCA for a determination of *quantum*.

## **ARGUMENT**

## I.    **STANDARD OF REVIEW**

9

The Federal Circuit's standard of review is governed by the Contract Disputes Act ("CDA"), which provides that "the decision of the agency board on any question of law shall not be final or conclusive…" 41 U.S.C. §609(b).

Statutory and regulatory constructions are questions of law, which the Federal Circuit reviews *de novo*. Lear Siegler Services, Inc. v. Rumsfeld, 457 F.3d 1262, 1265-66 (Fed.Cir.2006); see also United States v. Boeing Co., 802 F.2d 1390, 1393 (Fed.Cir.1986) ("The interpretation of regulations which are incorporated into government contracts is a question of law which this court is free to resolve.").

The interpretation of a government contract is also question of law, which the Federal Circuit reviews *de novo* on appeal. Lear Siegler Servs., 457 F.3d at 1266; Forman v. United States, 329 F.3d 837, 841 (Fed.Cir.2003). This Court gives the Board's legal conclusions "careful consideration due to the board's considerable experience in construing government contracts." Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1577 (Fed.Cir.1994); see also Titan Corp. v. West, 129 F.3d 1479, 1481 (Fed.Cir.1997) ("The Board's interpretation of a contract is not final, and is subject to *de novo* review on appeal, although due respect is often warranted by the Board's experience in interpreting the Federal Acquisition Regulations (FAR).").

When a matter of contract interpretation is decided on summary judgment,

"the nonmovant's version of the underlying facts must be believed, and judgment can not be sustained in favor of the movant unless there is no version of the facts that could support a contract interpretation in favor of the nonmovant." C. Sanchez and Son, Inc. v. United States, 6 F.3d 1539, 1544 (Fed.Cir.1993); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).

## II.    THE BOARD ERRED AS A MATTER OF LAW IN GRANTING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING APPELLANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, IN ASBCA 57611 BY HOLDING THAT THE GOVERNMENT DID NOT BREACH THE CONTRACT BY FAILING TO ORDER THE GUARANTEED MINIMUM (BY DECEMBER 24, 2010).

In ASBCA 57611, the parties filed competing motions for summary judgment on the legal issue of whether the Government breached the Contract by failing to order the guaranteed minimum by 120 days prior to the Contract completion date, or by December 24, 2010.  The Board erred as a matter of law in granting the Government's motion for summary judgment, and denying DayDanyon's cross-motion for summary judgment.  The plain language of the Contract required that the Government order the guaranteed minimum by one-hundred twenty (120) days prior to the expiration of the Contract, or by December 24, 2010.  The Government failed to order the guaranteed minimum by that date and, therefore, is liable to DayDanyon for breach of contract damages.

11

The subject Contract was an indefinite delivery, or "IDIQ," contract. The Contract specifically stated that "[t]his is a[n] Indefinite Quantity Contract," for which "[o]rders may be issued on this contract for a period of TWO YEARS." (A196)  With respect to the timing of deliveries, the Contract provided that DayDanyon had 120 days from the date of the Government's orders within which to deliver the containers: "After First Article Test approval, the required delivery for production quantities under this contract is 120 days after the date of the resulting delivery orders." (A196)  The Contract also included FAR 52.216-9007 which states that "[d]elivery orders will specify delivery no less than 120 days from the date of the order…" (A211)  The Contract provided that the Government could issue delivery orders from the date of award through two (2) years (A210), and that "[a]ny order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order…**provided, that the Contractor shall not be required to make any deliveries under this contract after Two Years.**" (emphasis added) (A211)

An IDIQ contract provides that the Government will purchase an indefinite quantity of supplies or services from a contractor during a fixed period of time, and requires the Government to order a stated minimum quantity of supplies or services. 48 C.F.R. § 16.504(a) (2000); *See also* <u>Travel Centre v. Barram</u>, 236 F.3d

1316 (Fed. Cir.2001); <u>Dot Sys., Inc. v. United States</u>, 231 Ct.Cl. 765 (1982).  With respect to the guaranteed minimum, DayDanyon's Contract provided that the Government was required to order a minimum of 1,000 containers:

> The Guaranteed Minimum is a total of 500 containers, whether placed for a single CLIN, or combination of CLINS that collectively total 500 containers.  The guaranteed minimum is 500 containers per year.  Since this is a two year base contract the minimum quantity is multiplied by 2.

(A196)  The Contract further provided that "[t]he Government guarantees that it will order under this contract…the following minimum… : …500 EA TOTAL (Quantity) multiplied by two [2] …" (A211)   It is well-recognized that an indefinite-quantity contract must contain consideration in the form of a minimum guarantee in order to avoid being illusory. <u>Maxima Corp. v. United States</u>, 847 F.2d 1549, 1557 (Fed. Cir. 1988), *citing* <u>Mason v. United States</u>, 222 Ct. Cl. 436, 615 F.2d 1343 (1980) ("[A] Guaranteed Minimum Quantity clause [serves] to ensure mutuality of obligations, and to make the contract enforceable by both parties to it.").  Similarly, the FAR requires that an indefinite-quantity contract contain a guaranteed minimum purchase obligation that is more than "nominal" in order to make the contract binding and enforceable. FAR 16.504(a)(2).  Without the promise of a guaranteed minimum purchase, there would be no consideration for the contractor's obligation to provide an unknown quantity of goods and

13

services that the Government may choose to buy. Absent reciprocal promises, the contract would be illusory and unenforceable. Mason, 615 F.2d at 1346.

The foregoing plain language of the Contract clearly requires that the Government issue the minimum of 1,000 JMIC containers by 120 days prior to the expiration of the Contract, or by December 24, 2010. As this Court has stated, when construing a contract it is necessary to begin with its plain language. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed.Cir.1996). The contract must be interpreted as a whole and "in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions." Granite Constr. Co. v. United States, 962 F.2d 998, 1003 (Fed.Cir.1992); see also McAbee Constr., 97 F.3d at 1435. Thus, if the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning." Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed.Cir.1993).

The Contract generally permitted the Government to issue orders for a period of two years from the date of award. However, this was subject to the other terms and conditions of the Contact as set forth herein, including that which specifically stated that DayDanyon was *not required* to make deliveries *after* two years. As such, pursuant to the plain language of the Contract, if the Government wanted to place an order, it had to do so by no later than 120 days prior to the expiration of the Contract to allow DayDanyon the required 120 delivery period.

14

Since the Contract was awarded on April 23, 2009 (A196-215), and since this was a two-year Contract, the Contract completion date was April 23, 2011. Therefore, the Government was required to order the guaranteed minimum of 1,000 JMICs by no later than December 24, 2010 to allow DayDanyon the required 120 days to deliver.

It is undisputed in this case that the Government only ordered 500 JMICs from DayDanyon, which is 500 less than the guaranteed minimum. (A358-361) By failing to order the guaranteed minimum, the Government breached the Contract. The primary objective of damages for breach of contract is to place the non-breaching party "in as good a position pecuniarily as he would have been by performance of the contract." Miller v. Robertson, 266 U.S. 243, 257, 45 S.Ct. 73, 69 L.Ed. 265 (1924). As the Federal Circuit has stated, "[t]he general rule is that damages for breach of contract shall place the wronged party in as good a position as it would have been in, had the breaching party fully performed its obligation." Mass. Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir. 1997). It is respectfully submitted that the ASBCA's decision should be reversed, and the matter should be remanded back to the ASBCA for a determination of *quantum* in accordance with the foregoing.

In its Opinion, the ASBCA ignored the plain language cited above and instead reasoned that "DayDanyon's interpretation violates the contract

interpretation rules to harmonize and give reasonable meaning to all parts of a contract and to render no provision useless, meaningless, inoperative or superfluous." (A45)    However, it is respectfully submitted that the ASBCA's decision violates the very contract interpretation rules upon which it relies.  More specifically, the ASBCA's opinion renders "meaningless, inoperative, and superfluous" FAR 52.216-22(f) included in the Contract which *specifically* provides that the Government could issue delivery orders from the date of award through two years, and that "[a]ny order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order...*provided, that the Contractor shall not be required to make any deliveries under this contract after Two Years.*" (emphasis added) (A211)  This FAR Clause, in the plainest language possible, makes it clear that orders can be placed during the two-year period *except* during the last 120 days of that period.  If the contractor is not "required to make any deliveries under this contract after Two Years," and if the contractor is given 120 days to complete a delivery (A196), then the Government was required to place its orders no later than December 24, 2010 to account for the 120-day delivery period.  It is respectfully submitted that the ASBCA's opinion simply ignores the express limitation contained within FAR 52.216-22(f) that the contractor "shall not be

16

required to make any deliveries under this contract after Two Years" (or after December 24, 2010). (A211)

Assuming, *arguendo*, the Contract were somehow ambiguous, then it should be construed against the Government. Subtle ambiguities are deemed latent and are accorded an interpretation favorable to the contractor under the doctrine of *contra proferentum. See* Interstate Gen. Gov't Contractors, Inc., 980 F.2d 1433, 1434 (Fed.Cir.1992). To the extent it could be argued that the Contract were ambiguous, the ambiguity was latent and, therefore, did not require the contractor to inquire. As argued herein, the language is very clear that the Government could place orders for up to two years after award (or until April 23, 2011), but if it did so less than 120 days prior thereto (or after December 24, 2010) then performance by DayDanyon was optional ("...provided, that the Contractor shall not be required to make any deliveries under this contract after Two Years"). (emphasis added) (A211) If, as the Government argues, this language is ambiguous, then at best it would be a latent ambiguity which should be construed against the Government.

To the extent it could be argued that the Contract were somehow *patently* ambiguous, the only evidence in the record is that DayDanyon had discussions about, *inter alia*, FAR 52.216-22 and DLAD 52.216-9007, with Government contracting personnel during the evaluation process. (A810-812) If the

17

Government interpreted the Contract differently than its plain language dictates, it should have explained this to DayDanyon during these discussions. A patent ambiguity in the contract will be resolved against the contractor only if he fails to inquire. *See* Beacon Constr. Co. v. United States, 161 Ct. Cl. 1, 314 F.2d 501, 504 (1963). While the Federal Circuit has invoked the patent ambiguity doctrine in appropriate cases, it has not given the doctrine broad application. Because the doctrine has the effect of relieving the government from the consequences of its own poorly drafted contracts, the doctrine has been applied only to contract ambiguities that are judged so "patent and glaring" that it is unreasonable for a contractor not to discover and inquire about them. *See* Beacon Constr. Co., 314 F.2d at 504. Here, the Government does not dispute or deny that its contracting personnel had discussions with DayDanyon prior to award as stated in the Declaration of its DayDanyon president Joseph Jankowski. (A810-812) As such, any ambiguity should be resolved against the Government. See Interstate Gen. Gov't Contractors, Inc., 980 F.2d at 1434-5 .

## CONCLUSION

Based on the foregoing, DayDanyon respectfully requests that the Court reverse the Board's decision on ASBCA 57611 granting the Government's motion for summary judgment, and denying DayDanyon's cross-motion for summary judgment, and remand to the Board for further findings on *quantum*.

Dated:        September 11, 2014

Respectfully submitted,

/s/ Joseph A. Camardo, Jr.
CAMARDO LAW FIRM, P.C.
*Attorneys for Appellant-Appellant*
127 Genesee Street
Auburn, New York 13021
Tel: (315) 252-3846
Fax: (315) 252-3508
Email: joecamardo@camardo.com

Form 30

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

Sep 12, 2014

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
    (by email or CM/ECF)

| Joseph A. Camardo, Jr. | /s/ Joseph A. Camardo, Jr. |
|---|---|
| Name of Counsel | Signature of Counsel |

Law Firm   Camardo Law Firm, PC

Address   127 Genesee Street

City, State, ZIP   Auburn, New York 13021

Telephone Number   315-252-3846

FAX Number   315-252-3508

E-mail Address   joecamardo@camardo.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief of Appellant-Appellant complies with the Rules of this Court in that it contains 4,043 words as calculated by the word processing system used to prepare this brief. This is within the limit of 14,000 words set by FRAP 32(a)(7).

/s/ Joseph A. Camardo, Jr.
Joseph A. Camardo, Jr.

**ADDENDUM**

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| DayDanyon Corporation | ) | ASBCA Nos. 57611, 57681, 57717 |
| | ) | |
| Under Contract No. SPM8ED-09-D-0001 | ) | |

| | |
|---|---|
| APPEARANCE FOR THE APPELLANT: | Mr. Joseph S. Jankowski<br>President |
| APPEARANCES FOR THE GOVERNMENT: | Daniel K. Poling, Esq.<br>DLA Chief Trial Attorney<br>Joseph R. Weidenburner, Esq.<br>Assistant Counsel<br>Kristin K. Bray, Esq.<br>Assistant Trial Attorney<br>DLA Troop Support<br>Philadelphia, PA |

OPINION BY ADMINISTRATIVE JUDGE JAMES
ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

These appeals arise from the DLA Troop Support (DLATS) contracting officer's (CO) decisions which relate to DayDanyon Corporation's (DayDanyon) 6 April 2011, $720,700 claim (ASBCA No. 57611), appellant's claim dated 18 May 2011 (ASBCA No. 57717), and the government's claim of 20 April 2011 which terminated the contract and its Delivery Order Nos. 0002 and 0003 for default (ASBCA No. 57681). The Board has jurisdiction of the appeals under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. On 1 November 2013, the government moved for summary judgment on the three appeals. On 12 November 2013, appellant moved for summary judgment on ASBCA Nos. 57611 and 57717. On 27 November 2013, the government responded to appellant's motion. Appellant opposed respondent's motion on 6 December 2013.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 23 April 2009, the Defense Supply Center Philadelphia, whose name was changed to DLA Troop Support, awarded Contract No. SPM8ED-09-D-0001 (the contract) to DayDanyon for Collapsible Joint Modular Intermodal Containers (JMIC) (R4, tab 4 at 1-2 of 21).

2.  The contract had four contract line item numbers (CLINs).  CLINs 0001-0003 each stated an estimated quantity of 500 JMICs.  CLIN 0001 JMICs were to be painted green, CLIN 0002 tan, and CLIN 0003 not painted.  CLIN 9906 was for first article test. (R4, tab 4 at 1-3 of 21, 12 of 21)

3.  The contract stated:

> This is a[n] Indefinite Quantity Contract.  Orders may be issued on this contract for a period of TWO YEARS.

> ....

> First Article Test quantities of 2 each are due to the government test facility...on or before 150 days after date of award....

> After First Article Test approval, the required delivery for production quantities under this contract is 120 days after the date of the resulting delivery orders.

> The Guaranteed Minimum is a total of 500 containers, whether placed for a single CLIN, or combination of CLINS that collectively total 500 containers.  The guaranteed minimum is 500 containers per year.  Since this is a two year base contract the minimum quantity is multiplied by 2.

(R4, tab 4 at 2 of 21)

4.  The contract incorporated, *inter alia*, the FAR 52.209-4, FIRST ARTICLE APPROVAL – GOVERNMENT TESTING (SEP 1989); FAR 52.216-18, ORDERING (OCT 1995); FAR 52.216-19, ORDER LIMITATIONS (OCT 1995); FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995); FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004); and FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) clauses (R4, tab 4 at 16-17 of 21, 21 of 21).

5.  As relevant to these disputes: (a) the FAR 52.216-18, ORDERING (OCT 1995) clause provided in pertinent part:

> (a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued –

2

FROM: DATE OF CONTRACT AWARD

THROUGH: TWO (2) YEARS

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

and (b) the FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995) clause provided:

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided*, that the Contractor shall not be required to make any deliveries under this contract after Two Years[.]

3

(R4, tab 4 at 16-17 of 21)  The record contains no evidence that DayDanyon sought from the CO clarification of the term "Two Years" in the above-quoted contract provisions.

    6.  On 4 June 2009, DLATS issued a Stop-Work Order on the contract.  Bilateral Contract Modification No. P00001, executed on 2 July 2009, authorized resumption of contract work.  (R4, tab 11 at 1-2 of 4)

    7.  On 16 December 2009, DayDanyon shipped two JMICs for government first article testing (R4, tab 34 at 1), with respect to which the test center found 27 major and 15 minor defects as reported on 13 January 2010 (R4, tab 38 at 1-8).

    8.  On 3 March 2010, DayDanyon submitted two JMICs, with respect to which the test center found 2 major and 5 minor defects as reported on 30 March 2010 (R4, tab 43 at 1-9).

    9.  DLATS' 6 April 2010 letter to DayDanyon noted conditional acceptance of the first article, provided that DayDanyon submit a corrective action plan addressing such deficiencies, which plan DayDanyon submitted on or about 7 April 2010 and DLATS approved on or about 9 April 2010 (R4, tabs 46, 47, 49).  DLATS authorized DayDanyon to begin production on 29 April 2010 (R4, tab 51).

    10.  On 3 May 2010, DLATS issued Delivery Order No. 0002 (DO 2) for 100 units NSN - 5795 (tan), and Delivery Order No. 0003 (DO 3) for 400 units NSN - 5311 (unpainted); these two DOs were ordered under CLIN "0001" (NSN - 5802, green) notwithstanding the color discrepancy.  Both DOs had a delivery date of 29 March 2010, later corrected to 31 August 2010, 120 days from receipt of order.  (R4, tabs 53-56)

    11.  On 5 August 2010, the CO issued unilateral DO 2 Modification No. 000203 extending the delivery date for 100 tan painted JMICs from 31 August 2010 to 15 October 2010, and unilateral DO 3 Modification No. 000302 extending the delivery date for 300 unpainted JMICs from 31 August 2010 to 30 September 2010 and for the 100 balance of unpainted JMICs from 31 August 2010 to 15 October 2010 (R4, tabs 73-74).

    12.  Effective 23 November 2010, bilateral DO 2 Modification No. 000204 extended the delivery date for 100 tan JMICs to 15 March 2011, and bilateral DO 3 Modification No. 000303 extended the delivery date for 400 unpainted JMICs to 8 March 2011 (R4, tabs 84-86).  These modifications clarified the foregoing discrepancies between CLIN and NSN numbers (*see* SOF ¶ 10) on the DOs and provided:

> IN CONSIDERATION OF THIS REVISED DELIVERY
> SCHEDULE, CONTRACTOR HEREBY
> UNCONDITIONALLY RELEASES AND WAIVES ALL
> CLAIMS AGAINST THE GOVERNMENT BY REASON

> OF DELAYS ATTRIBUTABLE TO EXCUSABLE
> CAUSES WHICH HAVE OR MAY HAVE OCCURRED IN
> THIS CONTRACT AND FOR ALL OTHER CAUSES,
> CONDITIONS AND HAPPENINGS WHICH HAVE
> OCCURRED UNDER THIS CONTRACT TO DATE.

(R4, tab 84 at 2)

13. DayDanyon stated in response to government interrogatories that due to exceptional weather events on 15-16 December 2010, 25-26 December 2010 and 9-10 January 2011, "DayDanyon was closed and directly lost five days of production." We take judicial notice that DayDanyon's plant is located in Hart County, Georgia. The accompanying National Weather Service reports showed neither the historic normal weather nor any unusually severe weather for Hart County on such dates. DayDanyon also stated that--

> [D]elays in delivering of JMICS were partially caused by the inability of two suppliers/subcontractors to guarantee delivery dates of certain automated production set-ups by mid-January 2011 for early February 2011 delivery. This resulted in DayDanyon having to develop alternative methods and processes utilizing components it had available in-house or were readily available off the shelf, over the course of late January and through February 2011.
>
> ....
>
> These actions/inactions occurred [during] the latter part of December, 2010 until mid-January, 2011.

(App. supp. R4, tab 46 at 5-21, 23, 25)

14. After several DCMA visits to DayDanyon's facility and DayDanyon reports of deliveries of contract materials, on 22 February 2011, the CO sent DayDanyon a cure notice stating that contract performance was endangered by lack of progress, noting the impending DO 2 and DO 3 delivery dates and giving DayDanyon 10 days to cure such conditions (R4, tab 106 at 2-3).

15. On 2 March 2011, DayDanyon told the CO that, "we can begin shipments soon" (R4, tab 110), "a major portion of the performance has been completed, and the remainder will be finished shortly" (R4, tab 111), and on 4 March 2011 stated that "[t]he first three shipments of JMICs, comprised of 100 – 200 units per shipment, have been

loaded into the DCMA SIR System. These will occur beginning later this month." (R4, tab 112)

16. From 11 March 2011 to 15 April 2011, DayDanyon and DLATS had several email exchanges regarding: (a) CO's status of progress inquiries and DayDanyon replies that JMICs components were arriving and side and access panel sheets were being assembled on 16 March 2011 (R4, tabs 117, 123-24; app. supp. R4, tabs 9-12); (b) DayDanyon's order of "[seven] custom designed...process stations for high production of JMICs" (R4, tab 114) of which two stations were received and operating on about 22-23 March 2011 (R4, tabs 119-20); (c) DCMA's 28 March 2011 email to DayDanyon inquiring whether DLA had indicated if it would extend the contract performance period, and advising of a new QAR, Mr. Robert Strain (app. supp. R4, tab 10) and (d) DayDanyon's JMIC shipment projections for 30 March 2011, 14 April 2011 and 22 April 2011 (app. supp. R4, tab 16). DayDanyon did not receive all the JMIC parts before the 8 and 15 March 2011 delivery dates (R4, tabs 114-15). DayDanyon began JMIC assembly on 22 March 2011, but did not tender any JMICs for inspection by DCMA, and delivered no JMICs to DLATS (R4, tabs 120, 125 at 5).

17. DayDanyon sent to the CO a $720,700 claim, dated and certified on 6 April 2011, alleging that DLATS had failed to place delivery orders for an additional 500 JMICs by 24 December 2010, which the contract required (R4, tab 121 at 2-3).

18. CO Joseph J. McHenry's 8 April 2011 letter responding to DayDanyon's 6 April 2011 claim stated that "the two year base period for [the contract] expires on April 23rd, 2011. Therefore, your claim is premature. If you wish, you may file your claim after the base period has expired." (R4, tab 122 at 2) On 27 April 2011, DayDanyon appealed from that letter on the basis of a deemed denial, which the Board docketed as ASBCA No. 57611.

19. On 20 April 2011, CO McHenry issued: (a) unilateral contract Modification No. P0004 which terminated the contract for default and advised DayDanyon of its appeal rights (R4, tab 125); and (b) unilateral Modification Nos. 000205 and 000304 terminating DOs 2 and 3 for default (R4, tab 126). On 11 July 2011, DayDanyon appealed from these decisions, which was docketed as ASBCA No. 57681.

20. DayDanyon sent CO McHenry a $720,700 claim, dated and certified on 18 May 2011, which aside from that date, was materially identical with its 6 April 2011 claim (R4, tab 127).

21. CO Mark L. Scott's 15 July 2011 decision denied DayDanyon's 18 May 2011 claim in its entirety and advised DayDanyon of its appeal rights (R4, tab 128). DayDanyon appealed from that decision on 29 July 2011, which was docketed as ASBCA No. 57717.

DECISION

Preliminarily, the government has not questioned the sufficiency under the CDA of DayDanyon's 6 April 2011 certified claim or the validity of the Board's CDA jurisdiction over ASBCA No. 57611 on a deemed denial basis, nor does the Board. DayDanyon's 6 April 2011 and 18 May 2011 claims are materially identical and differ only as to their dates (SOF ¶ 20). Accordingly, we dismiss ASBCA No. 57717 as duplicative of ASBCA No. 57611.

A tribunal shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment properly may be granted to a party when the non-moving party fails to offer evidence on an element essential to its case and on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Liberty Lobby*, 477 U.S. at 247. The government moves for summary judgment on the default termination, ASBCA No. 57681. The parties cross-move for summary judgment on DayDanyon's breach claim in ASBCA No. 57611.

These appeals present the following issues: (1) in ASBCA No. 57681, whether DLATS properly terminated the contract for default due to DayDanyon's failures to remedy the conditions endangering contract performance and to deliver 500 JMICs pursuant to the last extended delivery dates; (2) in ASBCA No. 57611, whether DLATS breached the contract by not ordering the 1000 guaranteed minimum JMICs (SOF ¶ 3) by 24 December 2010, as DayDanyon claims.

I. Default

Our SOF extracted the material facts proposed in the government's motion and added some facts proposed by appellant in SOF ¶¶ 5, 13, 15 and 16. Neither party has raised any genuine issue of material fact with respect to such facts (*see* gov't resp. at 2-6; app. opp'n at 2-10).

The government has the burden of proof that its default termination was justified. *See Nuclear Research Corp. v. United States*, 814 F.2d 647, 650 (Fed. Cir. 1987). A contractor's failure to make timely delivery of agreed-upon goods establishes a prima facie case of default. *Id.* The burden then shifts to the contractor to show that the failure to deliver the contract goods was excusable. *See DCX, Inc. v. Perry*, 79 F.3d 132, 134 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 992 (1996).

7

The last extended delivery dates were 8 March 2011 for 400 unpainted JMICs under DO 3 and 15 March 2011 for 100 tan JMICs under DO 2 (SOF ¶ 12). By 15 March 2011 DayDanyon had delivered no JMICs to DLATS (SOF ¶ 16). Thus, the government prima facie has established that DayDanyon was in default for failure to deliver the supplies by those March 2011 dates under paragraph (a)(1)(i) of the contract's FAR 52.249-8, Default clause.

DayDanyon argues that DLATS was required to extend the delivery dates by five days due to "exceptional weather events" on 15-16 December 2010, 25-26 December 2010 and 9-10 January 2011 (app. opp'n at 11; SOF ¶ 13). The record contains evidence of neither the historic normal weather nor any unusually severe weather for Hart County on such dates (SOF ¶ 13). Thus, the record contains no proof of "unusually severe weather" under paragraph (c)(9) of the contract's FAR 52.249-8, Default clause. *See All-State Construction, Inc.*, ASBCA No. 50513 *et al.*, 04-2 BCA ¶ 32,778 at 162,082-84 (number of days of excusable weather delay determined by comparing experienced rain and snowfall to "historic normal" rain and snowfalls). Even if, *arguendo*, Hart County experienced "unusually severe weather" on those dates, that five-day delay would not excuse DayDanyon's failure to deliver timely.

It remains to analyze DayDanyon's argument that by delaying its termination to 20 April 2011 with "full knowledge that the Contractor was continuing production and progress," the government waived the contractor's default for failure to deliver 400 unpainted JMICs by 8 March 2011 and 100 tan JMICs by 15 March 2011 (app. opp'n at 11). To prove waiver of default, a contractor must show: (1) failure to terminate within a reasonable time after default under circumstances indicating forbearance; and (2) reliance by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent. *DeVito v. United States*, 413 F.2d 1147, 1153-54 (Ct. Cl. 1969) (CO waived delivery date when he knew that the contractor, during the month after the due date passed, made four deliveries, and the government accepted 420 of 1,000 units, which activities constituted substantial reliance on the CO's failure to terminate).

We focus on whether, after the DO2 and DO3 delivery dates had passed, the CO's and DCMA's inquiries about DayDanyon's production status, DCMA's identification of a new QAR at DayDanyon[1] and DayDanyon's projection of JMIC deliveries on

---

[1] DayDanyon asserts that DCMA's Mr. Oppedisano's reports and photos on the status of DayDanyon's JMIC materials and assembly showed "bad faith" because they conflict with Mr. Jankowski's views on that status (app. reply br. at 7-10). Those views do not meet the "clear and convincing proof" of a specific intent to injure the contractor criterion to overcome the strong presumption of good faith actions of a government official. *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002).

30 March, 14 April and 22 April 2011 (SOF ¶ 16), amounted to the CO's implied consent to its continued performance after default. Board decisions do not provide clear guidance with respect to our fact pattern. *E.g.*, *DCX-CHOL Enterprises, Inc.*, ASBCA No. 54707, 08-2 BCA ¶ 33,389 at 167,730 (after contractor defaulted, even though the government knew that the contractor was continuing performance and accepted 32 of 278 delinquent items, the 84 to 176-day period from default to notice of termination was not unreasonable; appeal denied); *cf. ACR Machine, Inc.*, ASBCA No. 54734, 06-2 BCA ¶ 33,383 at 165,504 (post-default, a government industrial specialist, unbeknownst to the CO, asked the contractor for a new realistic delivery schedule; government motion for summary judgment denied). Mindful that the evidence of the non-moving party on the waiver issue (here, DayDanyon) is to be believed, and all justifiable inferences are to be drawn in its favor, *Liberty Lobby*, 477 U.S. at 247, we hold that the present appeal record is insufficiently developed to grant respondent's motion on ASBCA No. 57681.

## II. Breach

As stated above, neither party has raised any issue of genuine material fact. We turn to the issue of whether DayDanyon or the government is entitled as a matter of law to judgment on its breach of contract claim. DayDanyon claims that DLATS failed to place delivery orders by 24 December 2010 for 500 additional JMICs (SOF ¶ 17; app. mot. at 12-13) and thus breached the contract.

The FAR 52.216-18 Ordering and 52.216-22 Indefinite Quantity clauses have different purposes. The FAR 52.216-18 clause defines the period for ordering supplies as the "DATE OF CONTRACT AWARD…THROUGH: TWO (2) YEARS" (SOF ¶ 5(a)). FAR 52.216-22(d) provides:

> (d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided*, that the Contractor shall not be required to make any deliveries under this contract after ***Two Years***. [Bold added]

(SOF ¶ 5(b))

DayDanyon interprets the FAR 52.216-18 period for issuing orders under this contract "FROM: DATE OF CONTRACT AWARD THROUGH: TWO (2) YEARS" (SOF ¶ 5(a)) as the same "Two Years" specified in the proviso of FAR 52.216-22(d), and concludes that DLATS had to order an additional 500 JMICs by "24 December 2010"

9

(contract award date plus 2 years less 120 days for delivery) (app. mot. at 12-13) in order for the government to obtain delivery within 2 years of contract award, or by 23 April 2011. DayDanyon's interpretation reduces the effective period for ordering from the specified "TWO (2) YEARS" to 20 months, and renders meaningless or superfluous the provisions of FAR 52.216-22(d), first, that orders issued within the effective period of the contract but not completed within the effective period of ordering are to be completed within the time specified by the order and second, the contract governs the parties' rights and duties under orders not so completed to the same extent as if the orders were completed during the contract's effective period. DayDanyon's interpretation violates the contract interpretation rules to harmonize and give reasonable meaning to all parts of a contract and to render no provision useless, meaningless, inoperative or superfluous. *See Precision Dynamics, Inc.*, ASBCA No. 50519, 05-2 BCA ¶ 33,071 at 163,922. We hold that DayDanyon's interpretation is unreasonable. We therefore must deny appellant's motion for summary judgment. Since the government did not breach the contract by failing to order an additional 500 units by 24 December 2010,[2] we grant the government's motion for summary judgment.

If we were to assume, *arguendo*, that the term "two years" appearing in the FAR 52.216-18 Ordering clause and in ¶ (d) of the FAR 52.216-22 Indefinite Quantity clause was inconsistent or ambiguous, such ambiguity was patent. DayDanyon did not seek clarification before contract award (SOF ¶ 5), so such arguable ambiguity is resolved against the contractor. *See Triax Pacific, Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997).

CONCLUSION

We grant the government's motion for summary judgment in ASBCA No. 57611, deny appellant's motion for summary judgment in ASBCA No. 57611 and deny that appeal. We deny government's motion for summary judgment in ASBCA No. 57681. We dismiss ASBCA No. 57717 as duplicative.

Dated: 22 January 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[2] Once the contract was terminated by the government, the government had no further duty to order additional units.

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

JACK DELMAN
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 57611, 57681, 57717, Appeals of DayDanyon Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11